(12 App. Div. 589.)

FEJDOWSKI v. PRESIDENT, ETC., OF DELAWARE & H. CANAL CO.

(Supreme Court, Appellate Division, Third Department. January 12, 1897.)

1. CONTRIBUTORY NEGLIGENCE—CIRCUMSTANTIAL EVIDENCE.
    In an action for death by wrongful act, freedom of decedent from contributory negligence may be shown by circumstantial evidence.

2. RAILROAD CROSSING—CONTRIBUTORY NEGLIGENCE—QUESTION FOR THE JURY.
    Contributory negligence is a question for the jury, where decedent, on a very dark night, stopped within 20 feet of a single track, and permitted a freight train to pass, and then drove on the track, and was struck by an engine going backward at the rate of 25 or 30 miles an hour, and following the other train within 100 or 200 feet, and having no car attached, no light on the rear end, giving no signal, emitting no sparks, and making little or no noise, while the noise of the train was still to be heard.

Appeal from trial term, Schenectady county.

Action by Apolonia Fejdowski, administratrix of the estate of Wincenty Fejdowski, deceased, against the president, managers, and company of the Delaware & Hudson Canal Company for death of wrongful act. From a judgment of nonsuit, granted at the close of plaintiff's case, she appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, and MERWIN, JJ.

Daniel Naylon, Jr., and Edward C. Whitmyer, for appellants.
Lewis E. Carr, for respondent.

PARKER, P. J. The deceased was crossing a single track of the defendant's road, at Edison avenue in Schenectady, on a wagon, driving two horses. When he got to within about 20 feet of the track, he stopped to allow a freight train to pass him. It was in the nighttime and very dark. After that train had passed about 100 feet, he started his team, and drove onto the track, and was there caught by an engine following the freight train, and killed. Such engine was backing up, without any light on its rear end. It gave no signals, either by bell or whistle, was not emitting any sparks or steam, and was running at the rate or 25 or 30 miles an hour. This action is brought by his administratrix to recover against defendant for negligently killing deceased, and she was non-

suited, on the ground that the evidence does not sufficiently show that the deceased was free from negligence that contributed to the accident. There is no direct evidence to show whether, after the freight train passed, deceased did or did not look before he drove onto the track, to see whether anything was following such train. But it does appear that, had he looked, he would have had an unobstructed view, save for the darkness, for about 1,000 feet along the track in the direction from which the engine approached.

It was the duty of the plaintiff to show affirmatively that the negligence of deceased did not contribute to the injury. Tolman v. Railroad Co., 98 N. Y. 198. No one was with deceased, and no one saw him as he passed onto the track. But, under such circumstances, direct proof of care on his part is not indispensable. The circumstances may show that the deceased exercised proper care for his own safety. In the Tolman Case, above cited (page 203), Judge Finch states the rule in the following language:

"The burden of establishing affirmatively freedom from contributory negligence may be successfully borne, though there were no eyewitnesses of the accident, and even although its precise cause and manner of occurrence are unknown. If, in such case, the surrounding facts and circumstances reasonably indicate or tend to establish that the accident might have occurred without negligence of the deceased, that inference becomes possible, in addition to that which involves a careless or willful disregard of personal safety; and so a question of fact may arise, to be solved by a jury, and require a choice between possible, but divergent, inferences. If, on the other hand, those facts and circumstances, coupled with the occurrence of the accident, do not indicate or tend to establish the existence of some cause or occasion of the latter which is consistent with the exercise of proper prudence and care, then the inference of negligence is the only one left to be drawn, and the burden resting upon the plaintiff is not successfully borne, and a nonsuit for that reason becomes inevitable."

In Cordell v. Railroad Co., 75 N. Y. 330, and in Wiwirowski v. Railroad Co., 124 N. Y. 420, 26 N. E. 1023, it is stated in shorter language, as follows:

"When the circumstances point just as much to the negligence of the deceased as to its absence, or point in neither direction, the plaintiff should be nonsuited."

The circumstances of this case, as it comes before us, are not disputed. The deceased heard the signal of the approaching freight train, and stopped about 20 feet from the track to allow it to pass. It appears, from a witness who was on the sidewalk of the same street, that he also stopped about the same distance from the track while such train was passing. As the train came up, he saw, by the headlight of that engine, the deceased sitting in the wagon waiting, but after the train had passed it was too dark to see the man. He, however, heard him tell his horses to go on, and heard him driving towards the track. The witness himself also passed on, and, when he got to within about five feet of the track, the engine, to use his expression, "flew by him," and instantly struck deceased. The witness further tells us that he could not tell whether deceased looked for another train or not, because it was so dark he could not see him, but that he himself looked up the track constantly from the time he started, after the freight train had

passed, thinking it possible that another train might follow, and watching for one, and yet he did not see the engine until just as it struck the deceased.

Such are the circumstances under which deceased met his death, —an intensely dark night; a freight train just passed; an engine following on the same track, within 100 or 200 feet of such train, at the rate of 25 or 30 miles an hour, running backward, and without a car attached; no light on the rear end; no signal of any kind given; emitting no sparks, and making little or no noise, while the noise of the passing train was still to be heard; in short, an engine approaching so stealthily that a man who was on the sidewalk, between the deceased and it, although watching for a coming train, did not see or hear it until it passed within five feet of him. In addition to this, we are to consider that a certain amount of deceased's attention must have been given to his horses. It cannot be said, as matter of law, that such circumstances do not "reasonably indicate, or tend to establish, that the accident might have occurred without negligence on the part of deceased." Whether, taken all together, they point to the conclusion that the reasonable precautions which deceased was able to take were insufficient to enable him to discover its approach, or to the conclusion that he heedlessly drove in front of the engine, is a question for the jury to solve.

The Wiwirowski Case, above cited, is not in conflict with this conclusion. The same rule of law was there adopted as is cited above; but, in applying it to the facts of that case, the court thought that a nonsuit was proper. In that case the engine, although backing down without a rear light, and without signals, was moving at a speed of about 4 miles an hour. It was hauling a caboose with a light on the top of it. There was nothing to obstruct the hearing, nor the vision, except the darkness, which does not seem to have been very intense. The deceased walked onto the track ahead of the engine, and, considering the speed at which it was going, it must have been very close to him when he did so,—so close that it is hardly credible he could have looked without seeing it. In the case before us, the engine was moving at a speed of from 40 to 44 feet in a second, and was naturally a considerable distance away from deceased in the darkness, when his horses began to go upon the track. In the Wiwirowski Case there is no evidence that any one made any effort to see the approaching engine at any point near to the track where deceased was struck. In the case before us, a witness, in as favorable a position to see as was the deceased, and but a few feet from him, made diligent but unavailing watch for it. It is true that it was not shown that the eyesight or hearing of such witness was good, but I do not know that it is to be presumed that the deceased's was any better.

There is another feature in the case before us to be considered. Assume that, after starting from the point where he waited for the freight train to pass, deceased drove directly onto the track without looking for another following it; should it be said, as matter of

law, that he was negligent in so doing? Such a situation is quite different from that in the Rodrian Case, 125 N. Y. 526, 26 N. E. 741, where a person was held negligent for allowing his attention to be distracted by a train passing on another track. In this case the engine was following at a rapid speed,—a freight train just ahead of it on the same track; and the question whether such a thing was likely to occur, so close to the train ahead of it, is to be considered in determining whether deceased acted as a man of ordinary prudence would have acted under such circumstances. See Brown v. Railroad Co., 32 N. Y. 597–602; Bowen v. Railroad Co., 89 Hun, 594, 35 N. Y. Supp. 540. Whether such a condition may be held to be a sufficient excuse for not looking for a following train, or not, it is a circumstance, to be considered with the others in this case in determining whether, taking them all together, they do not indicate that the accident might have occurred without any negligence on the part of deceased. In this respect, also, as well as in several others, this case differs from the Wiwirowski Case, and leads us to conclude that such case is not controlling upon this one.

It is our conclusion that the judgment should be reversed, and a new trial granted, costs to abide the event. All concur.