ADELAIDE WALL, Appellant, *v.* INTERNATIONAL RAILWAY COMPANY, Respondent.

Fourth Department, March 9, 1921.

Street railways — duty of alighting passenger passing to rear of car injured by oncoming car on another track — when guilty of contributory negligence as matter of law.

A passenger alighting from a street car and passing around the end thereof towards another track upon which a car may be approaching from an opposite direction must be satisfied that the way is clear before passing into the danger zone.

The mere fact that such passenger did not actually get upon or within the rails of the other track before she was injured by a car coming from an opposite direction, may not be invoked to exonerate her from the charge

of being guilty of contributory negligence as matter of law under the circumstances of this case, since she actually got into the path of the oncoming car.

KRUSE P. J., and DAVIS, J., dissent, with opinions.

APPEAL by the plaintiff, Adelaide Wall, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Erie on the 29th day of October, 1919, dismissing the complaint at the close of the plaintiff's case.

*Charles W. Strong*, for the appellant.

*James C. Sweeney*, for the respondent.

LAMBERT, J.:

The full presentation of the facts of the case, in the dissenting opinion of Mr. Justice DAVIS, is adequate to the application of the controlling rules of law.

It may be conceded that the proof of speed, failure of warning and violation of the ordinances was sufficient to carry the case to the jury upon the question of the defendant's negligence. The charge of contributory negligence of the plaintiff is the serious inquiry here.

It is conceded that the plaintiff, upon alighting from the car, passed to the rear thereof and into a position where she was struck by an oncoming car upon the car track.

The nonsuit was granted upon the authority of *Reed* v. *Metropolitan Street R. Co.* (180 N. Y. 315) and *Schasel* v. *International R. Co.* (185 App. Div. 196; affd., 230 N. Y. 538).

The rule as laid down in the *Reed* case is: " A person passing behind the rear of a car and stepping onto the track where a car may be approaching from the opposite direction, is bound to satisfy himself that the way is clear."

This is but another way of stating that a person so conducting himself proceeds at his peril.

The statement quoted, as to stepping upon the far track, obviously applies to a case like this, where the plaintiff did not actually get upon or within the rails of the track, but so close as to be in the path of the approaching car, and thereby sustained injury. In other words, the mere fact that the plaintiff did not actually get upon the track may not be invoked to exonerate her from the charge of contributory

negligence. She did get into the path of the car. Her conduct brought her within the reason and application of the rule enunciated in the *Reed* and *Schasel* cases cited.

The judgment should be affirmed, with costs.

All concur, except KRUSE, P. J., and DAVIS, J., who dissent, each in a separate opinion.

DAVIS, J. (dissenting):

The plaintiff was nonsuited on the trial and judgment entered for the defendant. I cannot concur in the decision of the majority to affirm.

The plaintiff was a passenger who had alighted from defendant's street car and was injured by being struck by a car passing on another track. The learned trial justice granted the motion for nonsuit at the close of the plaintiff's case, and relying on his recollection of the evidence, stated in substance that the car from which the plaintiff alighted had started at the time of the accident, that she had gone upon the track without the slightest effort to look, and was struck before she had an opportunity to look to determine that it was a safe place, and, therefore, she was guilty of contributory negligence as a matter of law. He was mistaken in his facts, and, therefore, I believe arrived at the wrong conclusion, for the plaintiff never reached the second track; she did look; and at best the evidence is in dispute whether the car from which she had alighted had yet started.

Let me somewhat more fully state the facts, taking them and the inferences to be drawn therefrom in the light most favorable to the plaintiff, as we are bound to do, she having been nonsuited. (*McDonald* v. *Metropolitan Street R. Co.*, 167 N. Y. 66, 68; *Sesselmann* v. *Metropolitan Street R. Co.*, 65 App. Div. 484.)

The plaintiff, an elderly woman, boarded an Elmwood avenue car in the city of Buffalo on February 1, 1917. She was going on a visit to some friends, and alighted at the usual stop at or near the intersection of Bedford avenue. There were other passengers getting off the car, the day was cold and there was snow on the ground. The car from which she alighted was going north. The home of her friends was to

the west, so she passed to the rear of the car and approached the south-bound track. The distance between the farther rail of the north-bound track and the near rail of the south-bound track was five feet, but the overhang of the car was twenty-three and one-half inches, and when she reached a position where she could look to the north past the car from which she had alighted, she looked and stood still, being somewhere in the space between the north-bound and south-bound tracks, but not within two feet of the nearest rail of the latter track. As she reached this point a south-bound car, then not over fifty feet away, approached her without slackening speed, giving no warning, and plaintiff threw up her hands and the car struck her left hand, causing a fracture of her wrist. The car which was running very fast, one witness said fifty feet in half a second, ran from one hundred to one hundred and fifty feet before it stopped. An ordinance then in force provided as follows: "Every driver or other person having the charge and the control of any street railway car within the City of Buffalo while approaching and passing any other street railway car standing for the discharge or reception of passengers shall sound the gong and reduce the speed of his car to a rate not to exceed five miles per hour." (Buffalo Ordinances, chap. 4, § 44, as amd. May, 1915, in effect June 4, 1915.)

If we are to say that the plaintiff was guilty of contributory negligence as a matter of law, we must state with some reasonable exactness what she was bound to do, in the exercise of reasonable care, when she alighted from the car and desired to proceed on her journey, which lay to the west. Three courses were open to her: *First.* She might stand still in the street where she alighted on this cold winter's day, while other passengers got off and others boarded the car, and until the conductor and motorman in the course of time elected to proceed, so that she might have a view to the north to see if a south-bound car was coming. This, besides being inconvenient and uncomfortable, would, of course, leave her where she would be exposed to the dangers of vehicular traffic, and perhaps under the stringent rule contended for here, make her guilty of contributory negligence as a matter of law if she was injured by a passing vehicle. *Second.* She could

go to the curb or sidewalk to the east in the opposite direction from which her journey lay, and there wait until the car moved on and she could become absolutely certain that it would be safe to cross the street and proceed to her destination. This would, of course, imply that the street railway company had the exclusive right to use the street at that point as long as it desired. *Third.* She might proceed cautiously to the west, being vigilant at all times that she did not get on the other track in front of any approaching car, relying for her safety not alone on what her own observation by looking might disclose, but upon the protection which the law gave her in requiring one car approaching another discharging passengers to proceed slowly and give adequate warning of its approach, and upon the assumption that the company, whose patron she was, would not expose her to an imminent danger at a point where she was permitted to alight from its car. I decline to advise her, as a matter of law that she was bound to adopt one of the first two courses suggested. Yet that is the practical result of holding that she was guilty of contributory negligence. It is suggested that she might have gone farther to the rear of the car where she would have a better view of the track. How much farther to the rear must she go? Since we are holding that she is negligent as a matter of law, we must advise her just what she should have done to exercise reasonable care, or else we have invaded the right of the jury to determine under given conditions what constitutes the vigilance and care of an ordinarily prudent person.

The proximate cause of the accident was either the negligence of the plaintiff or the violation of law on the part of the defendant. It is, under the circumstances disclosed, essentially a question of fact.

No one will claim, I presume, that after alighting the plaintiff was required by law to stand in one place; she might at least walk about as long as she did not go upon the other track or so near it that a car would strike her, and not be chargeable with contributory negligence. In exercising this privilege (which I believe any court would award her) the plaintiff stepped into a position of safety. Had she

remained practically still she would not have been injured, but the sudden appearance of the car apparently startled her and caused her to throw up her hands to fend off the onset of this sudden danger. It was a perfectly natural involuntary movement under the circumstances, yet in making it her arm was struck by a car which was coming at an illegal rate of speed and had given no warning of its approach. In that instant of time, by that involuntary movement of her arms, did she become guilty of contributory negligence as a matter of law? I cannot so hold.

The court below relied upon *Reed* v. *Metropolitan Street R. Co.* (180 N. Y. 315), and it is urged by the respondent's counsel here as furnishing authority for sustaining the judgment. The facts are entirely different in the *Reed* case, and the doctrine laid down there does not apply here. In that case the passenger alighting passed to the rear of the car and went on the south-bound track where he was struck, without looking north to see if anything was coming. He was actually upon the track and his body was struck. The rule laid down by Judge BARTLETT is this (p. 317): " A person passing behind the rear of a car and stepping onto the track where a car may be approaching from the opposite direction, is bound to satisfy himself that the way is clear. It is apparent that the slightest caution on the part of this plaintiff would have advised him of the presence of the approaching car and avoided this accident."

The record in the *Reed* case shows, I believe, that the car which struck the plaintiff was proceeding at not to exceed two miles an hour, and the motorman rang the gong continuously in approaching and passing the standing car. How then can the *Reed* case be an authority controlling in the decision of the case under consideration? At the expense of being charged with repetition, let me state again that the plaintiff had not yet reached the south-bound track; she had stopped and was looking in a position of apparent safety; she was exercising caution; she received no warning by gong or other signal; the motorman was not observing the law as to speed. Where is there resemblance as to facts, or where is the doctrine in the *Reed* case that may be properly applied here?

In *Schasel* v. *International R. Co.* (185 App. Div. 194;

affd., 230 N. Y. 538), a case in this department which is also urged as authority for affirmance, the plaintiff was between the rails of the track when struck. In that case the plaintiff's evidence was contradictory and improbable, as it always is when a person having a clear view of an approaching object states he looked and saw nothing. It is often difficult to adhere strictly to abstract legal principles even if sound, where the merits in a case are lacking. Though the majority of the court went to the limit of the doctrine of contributory negligence *per se* to reverse the judgment and dismiss the complaint, undoubtedly a just result was arrived at in the *Schasel* case in view of the evidence. The plaintiff there was held " negligent as matter of law in failing to look for a north-bound car from a safe place between the two sets of tracks where the other car did not obstruct his view." The plaintiff in this case did look at that point.

The other leading cases following the rule of the *Reed* case are *Maynard* v. *Rochester R. Co.* (136 App. Div. 212); *McGreevy* v. *New York City R. Co.* (113 id. 155), and *Axelrod* v. *New York City R. Co.* (109 id. 87). In the *Maynard* case the plaintiff walked upon the track without stopping, although she claimed she looked, and her evidence was regarded by the court as rather incredible; but she apparently got upon the track in front of the approaching car, and the judgment in her favor was reversed and a new trial ordered, but not entirely upon questions of law. (See 143 App. Div. 957.) In the *McGreevy* case the plaintiff's intestate was killed and the evidence disclosed that he was struck when he went upon the track with the car coming a short distance away, although he had opportunity to see the approaching car before he got upon the track. The plaintiff was then required, in a death case, to assume the burden of showing the person killed free from contributory negligence, and the court held that that fact was not established. The same may be said of the *Axelrod* case.

The case most similar in its facts to the instant case, it seems to me, is *Pelletreau* v. *Metropolitan Street R. Co.* (74 App. Div. 192; affd., 174 N. Y. 503). There the plaintiff, a school girl, alighted from a north-bound car in New York city and started toward the west side of the street. A friend

walking about six feet in advance succeeded in crossing the south-bound track in safety but before the plaintiff had reached the nearest rail of that track she was struck by a south-bound car. She testified that before attempting to cross she stopped to look for approaching cars and did not discover any. The south-bound car approached without slackening speed and without warning. The space between the overhanging sides of the passing cars between the two tracks was only one foot three inches, and the testimony on the part of the defendant was that the maximum speed of the car was seven miles per hour. In affirming the judgment in favor of the plaintiff, the court held that it could not be said under these circumstances as a matter of law that she was guilty of contributory negligence.

That it is ordinarily a question of fact to be determined by the jury, where a person is struck by a street car while approaching or upon a track and the person injured has exercised some degree of care and vigilance, is held by a long line of authority, particularly where there is gross negligence on the part of the defendant. (*Provoost* v. *International R. Co.*, 151 App. Div. 240; affd., 208 N. Y. 611; *Craven* v. *International R. Co.*, 100 App. Div. 157; *Stevens* v. *Union R. Co.*, 75 id. 602; affd., 176 N. Y. 607; *Dobert* v. *Troy City R. Co.*, 91 Hun, 28; *Beers* v. *Metropolitan Street R. Co.*, 104 App. Div. 96; *Sesselmann* v. *Metropolitan Street R. Co.*, 65 id. 484.)

A person passing to the rear of a street car and getting entirely upon another track, ordinarily has had an opportunity at some time to see and to exercise care; and the general rule is that a person who thus blindly walks into a danger which the exercise of due care would have enabled him to avoid, is guilty of contributory negligence as a matter of law; or, to state the rule more broadly, if a person knows that he is in a place of danger; it is his duty to exercise some care for his own safety, and if he takes no care whatever, he is then guilty of contributory negligence. (*Volosko* v. *Interurban St. R. Co.*, 190 N. Y. 206, 209.) But if he exercises some degree of vigilance and care, it then becomes a question of fact, and a party has a right to have it submitted to the body designated by the Constitution to try such issues,

subject, however, to a review by the court as to whether the weight of evidence sustains the verdict.

To affirm the judgment we must adopt the broad principle that if a person goes behind a standing car from which he has alighted, and gets on or near another track where cars run in an opposite direction, and is injured, he is guilty of contributory negligence as a matter of law, no matter what degree of vigilance or care he exercises or how great the negligence of those operating the car which struck him. No court has gone that far and the doctrine I believe is unsound.

For the reasons stated I favor reversal and the granting of a new trial.

KRUSE, P. J. (dissenting):

I concur for reversal. As pointed out in the opinion of Mr. Justice DAVIS, the plaintiff was not upon the track of the car which struck her, but between the two tracks. She says she walked around the back end of the standing car from which she had alighted, looked up, saw this car coming fast; she threw up her hands, and the car struck her left hand; that she looked up as soon as she got past the car; that she was then standing in the space between the two tracks; this space was five feet wide and the overhang of the car was twenty-three and one-half inches, leaving a clearance between the two cars of only thirteen inches.

To hold that under such circumstances a passenger is negligent as a matter of law exacts a degree of care beyond what is reasonable, as I think, and extends the rule of contributory negligence farther than any decision of the Court of Appeals cited to sustain this nonsuit.

Judgment affirmed, with costs.